IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID E. AUGUSTSON
d/b/a AUGUST ARMS AND
FULLAUTOS.COM,

       Plaintiff,

                                                           CIV 09-00617 BB/RLP

       v.

ERIC HOLDER,
UNITED STATES ATTORNEY GENERAL,

       Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on cross-motions for summary judgment filed by Plaintiff David E. Augustson and Defendant, Attorney General Holder [Docs. 18 and 20]. Plaintiff brought this action pursuant to the Gun Control Act of 1968, 18 U.S.C. §§ 921 - 928 ("GCA"), seeking *de novo* review of the revocation of his federal firearms license by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("the ATF"). After reviewing the submissions of the parties and the relevant law, this Court finds that Defendant's motion for summary judgment should be GRANTED and Plaintiff's cross-motion for summary judgment should be DENIED.

**I. Factual Background**

David E. Augustson and Shirley J. Augustson,[1] proprietors of August Arms ("August Arms"), received a federal license to sell firearms in 1991. The GCA, 18 U.S.C. §§ 921-931, authorizes the ATF to inspect licensed firearm businesses in ensuring compliance with federal

---

[1] Ms. Augustson was removed from the federal firearms license in 2008 and she is not a party to this suit.

firearms license regulations. *See* 18 U.S.C. § 923(g). The ATF inspected August Arms on five separate occasions between 2000 and 2007. Each compliance inspection revealed significant violations of the GCA. Most commonly, the ATF noted that August Arms failed to (1) ensure proper completion of Firearms Transaction Records, Form 4473,[2] as required by 27 C.F.R. § 478.124; and (2) accurately maintain a bound book recording the acquisition and disposition of firearms,[3] as required by 27 C.F.R. § 478.125(e). After each compliance inspection, the ATF issued a Report of Violations, informing August Arms of the violations and the required corrective action.  Mr. Augustson signed the Report of Violations indicating that he understood the violations and that each had been explained to him. Additionally, on two occasions, the ATF conducted warning conferences with Mr. Augustson to review record-keeping requirements and warn him that any willful violation may result in the revocation of his federal firearms license.

After the April 2007 compliance inspection, which revealed repeat violations involving record-keeping errors and omissions,[4] the ATF revoked August Arms' federal firearms license. In

---

[2]The purpose of Form 4473 is "to record identifying information about gun purchasers and the firearms they purchase, which allows firearms to be traced and prevents transfer to persons prohibited from possessing firearms." Article II Gun Shop v. Gonzales, 441 F.3d 492 (7th Cir. 2006).

[3]Licensed firearms dealers must maintain an acquisition and disposition book or a "bound book" with a record of "each receipt and disposition of firearms." *See, e.g.*, 27 C.F.R § 478.125(e).

[4]The 2007 violations forming the basis for the revocation of August Arms' federal firearms license include, *inter alia*, failure to (1) enter complete and correct information in the bound book; (2) report the multiple sale of handguns; (3) obtain the transferee's middle name on ATF Form 4473; (4) obtain complete and correct Form 4473  relating to over-the-counter transfer of firearms to non-licensees; (5) record information from non-licensees establishing the 90-day residency requirement for nonimmigrant aliens; (6) record all required NICS information on Form 4473; (7) obtain complete and correct Form 4473 relating to the required firearm identification information; (8) sign and/or date Form 4473 prior to transferring firearms to non-

August, 2008, the ATF served August Arms with a Notice of Revocation. August Arms promptly requested a hearing to review the proposed license revocation, which was held in December 2008. The ATF was unable to locate its file regarding August Arms' compliance history before the hearing.[5] As a result, Hearing Officer Alford Norris refused to consider GX-94—the ATF's proffered summary narrative of August Arms' past violations—as evidence. Nevertheless, Hearing Officer Norris recommended that the license be revoked. On April 21, 2009, the ATF issued a Final Notice of Revocation. Mr. Augustson timely petitioned this Court for a *de novo* review, contesting all ten grounds cited in the Final Notice as the basis for the license revocation. Both he and the Defendant ("the Government") now move for summary judgment.

In his briefing, Mr. Augustson largely acknowledges that the violations occurred, but disputes that they had been committed "willfully." First, he asserts that he did not commit a single violation "willfully" because many of the violations were the result of errors and omissions of another employee—Ms. Shirley Augustson[6]—and Mr. Augustson therefore had no

---

licensee; (9) conduct a NICS background check prior to the transfer of a firearm to a non-licensee; (10) furnish all information required on Form 4473 as indicated by the headings and instructions. *See, e.g., Brief for the Petitioner* [Doc. 1] at 6-1; *See also Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56* [Doc. 19] at 3-5.

[5]The 2000, 2001, 2004, and 2005 compliance inspections and related warning conference reports could not be located at the time of the December, 2008, administrative hearing. Because the documents were missing, the Government used GX-94—a two page summary of the missing documents—to prove that August Arms committed numerous repeat violations. The missing documents were subsequently located in the Tucson, Arizona Field Office and submitted to this Court as evidence. (Morse Declaration at 2: 4-19).

[6]In her affidavit, Ms. Shirley Augustson alleges that many, but not all, of the record-keeping errors and omissions were the result of her depression, panic attacks, sleep apnea, narcolepsy, and Reynaud's disease. (Shirley Augustson Aff. at 2: 4-11).

knowledge or reason to have knowledge of the alleged violations. Second, Mr. Augustson contends that the partial errors cited in the Final Notice of Revocation were not repeat violations; rather, Mr. Augustson's errors—as opposed to Ms. Shirley Augustson's errors—were limited to only three out of the ten Grounds cited in the Final Notice of Revocation.

In response, the Government makes two primary arguments. First, it contends that even if Ms. Augustson was responsible for many of the errors and omissions in the record-keeping book, Mr. Augustson is still responsible for ensuring compliance with the GCA, and his responsibility extends to the actions of other employees. Second, the Government argues that a total of seven violations is significant when the Act requires compliance with *all* provisions. Even if some of the violations were only partial errors that were not repeat violations, the law only requires a single violation of the GCA to establish a basis for revoking an existing license.

## II. Standard of Review

### A. *De Novo* Review under 18 U.S.C. § 923(f)(3)

A revocation of a federal firearms license by the ATF is subject to *de novo* judicial review pursuant to 18 U.S.C. § 923(f). Under § 923(f)(3), if the district court decides that "the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." The reviewing court can consider any evidence submitted by the parties regardless of whether the evidence was submitted in the administrative proceeding. *See* 18 U.S.C. § 923(f)(3); *DiMartino v. Buckles*, 129 F.Supp.2d 824, 827 (D.Md.2001). Although a *de novo* judicial review is authorized by 18 U.S.C. § 923(f)(3), a *de novo* hearing is not required. Absent genuine issues of

material fact, a court may properly grant summary judgment without an evidentiary hearing. *See, e.g., Cucchiara v. Secretary of the Treasury,* 652 F.2d 28, 30 (9th Cir. 1981).

### B. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2002). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *See Serna v. Colo. Dep't of Corr.,* 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996)). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor. *Id.* Although this case involves cross-motions for summary judgment, each motion must be considered independently. *Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979). The denial of one does not require the granting of the other. *Id.*

**III. Discussion**

    **A. Admissibility of Evidence**

August Arms contends that the Court should not consider any of the ATF reports submitted by the Government. The 2000, 2001, 2004, and 2005 ATF inspection reports and letters were submitted to the Court as attachments to the Declaration of ATF Area Supervisor, Elise M. Morse. Because the ATF reports were missing at the time of the 2008 revocation hearing, the Government attempted to use GX-94—a two page summary of the missing documents—to prove that August Arms committed numerous repeat violations. Ultimately, the ATF hearing officer determined that GX-94 was not admissible, but still concluded that August Arms had committed willful violations of the GCA.

After the 2008 revocation hearing, the ATF reports were subsequently located at the Tucson, Arizona ATF Field Office and submitted to this Court. August Arms objects to the introduction of these reports on two grounds: (1) because they were unavailable at the time of the revocation hearing; and (2) because they are allegedly inadmissible.

The District Court in a *de novo* review may "consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing . . . [.]" 18 U.S.C. § 923(f)(3). Accordingly, the Court may consider the ATF documents that were missing at the time of the 2008 revocation hearing.

Additionally, August Arms argues that the ATF reports should not be considered because they are inadmissible. The Court disagrees with this contention. To be admissible, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."

*See Ortiz v. Wingard*, 173 F.Supp.2d 1155, 1163 (D.N.M. 2001); *see also* 10A Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2722 at 384 (3d ed.1998). In the instant case, the ATF reports were authenticated by the Declaration of Elise M. Morse pursuant to Rule 56(e).[7] Ms. Morse authenticated the ATF reports by establishing that they are public reports, kept in a public office, where reports of that type are kept. *See* Fed. R. Evid. 901(b)(1)(7) ("Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."). Ms. Morse is competent to make such a statement because she is an agent of the ATF with extensive knowledge of ATF's record-keeping system.[8] Ms. Morse need not swear to her personal knowledge of the facts contained in the ATF reports because public records and reports are admissible as an exception to the hearsay rule, once their authenticity is established. *See* Fed. R. Civ. P. 803(8).

The ATF reports qualify for this exception because they fall within the purview of Fed. R. Evid. 803(8)(C) (defining public records and reports). The ATF Report of Violations is a document that enumerates the specific violations found during a compliance inspection and outlines the required corrective action. *See Armalite, Inc. v. Lambert*, 544 F.3d 644, 649 (6th Cir. 2008). The relevant portion of Fed. R. Evid. 803(8)(C) states that in civil cases, admissible government reports are limited to "factual findings resulting from an investigation made pursuant

---

[7]Although the Government submitted a declaration instead of an affidavit, 28 U.S.C. § 1746 "allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."

[8]In her Declaration, Ms. Morse explicitly says that as Area Supervisor of ATF, she has "obtained extensive knowledge regarding . . . documents relating to compliance inspections." *See* Declaration of Elise M. Morse (Exhibit A) [Doc. 27-1].

to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The advisory committee's note to Rule 803(8)(C) sets forth several examples of admissible evaluative reports, including: (1) a post-office department's transcript listing a post-master's accounts, *United States v. Dumas*, 149 U.S. 278, 872 (1893); (2) a report made by the Bureau of Mines regarding the occurrence of a gas tank explosion, *Moran v. Pittsburgh-Des Moines Steel Co.*, 183 F.2d 467 (3d Cir.1950); and (3) an Army Camp letter and a Certificate from the General Accounting Office indicating that the government had performed its contractual obligations, *McCarty v. United States*, 185 F.2d 520 (5th Cir.1950). In each example, the document at issue lists factual findings prepared during the regular course of an investigation. *See also Perrin v. Anderson,* 784 F.2d 1040 (10th Cir.1986) (discussing requirements for admissibility under 803(8)(C)). Similarly, in the instant case, the ATF reports set forth the factual findings regarding violations of the GCA made during the course of a compliance inspection. Accordingly, the ATF reports submitted by the Government constitute public records that are admissible under Fed. R. Evid. 803(8)(C).

Alternatively, even if the reports were not admissible, August Arms failed to preserve any issue regarding the GCA violations committed between 2000 and 2005. The Government's recitation of uncontested facts detail violations that include, *inter alia*, failure to accurately complete Form 4473 on several occasions and failure to accurately record numerous acquisitions and dispositions. *See, e.g.,* Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Doc. 19] at 6-8. August Arms does not dispute the existence of these violations; rather, it contends that the documents are inadmissible. In fact, August Arms specifically admitted the violations occurred and argues only that they were

not willful. Because such facts, when not disputed, are deemed admitted, there is presently no dispute regarding the existence of August Arms' previous violations. *See also* District of New Mexico Local Rule 56.1(b); *Cucchiara*, 652 F.2d at 29.

### B. Willful Violations

The Attorney General is authorized to revoke a gun dealer's license if the licensee has "*willfully* violated any provisions of [the GCA]." 18 U.S.C. §923(e) (emphasis added). Thus, this case presents a simple issue: did August Arms commit record-keeping errors and omissions that amount to willful violations of the GCA? Although the Tenth Circuit has not addressed this issue, the Court agrees with the majority of circuits[9] that a willful violation is established when a dealer "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." *See Perri*, 637 F.2d at 1336; *see also Cucchiara*, 652 F.2d at 30; *Lewin*, 590 F.2d at 269; *Armalite*, 544 F.3d at 648. A *single* willful violation is sufficient to establish willfulness. *E.g., Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008). In the civil context, bad purpose or evil motive is not required to establish willfulness. *See Prino,* 606 F.2d at 451. Additionally, "mere mistakes" and "negligence" may not amount to willful

---

[9]The Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits agree that willfulness is defined as a purposeful disregard of or plain indifference to the law. *See Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464-65 (6th Cir. 2004); *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1336 (9th Cir. 1981); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1276-77 (11th Cir. 2005). In *Prino v. Simon*, the 4th Circuit articulated the minority definition of "willful," which differs only in that the term "plain indifference"is omitted. 606 F.2d 449, 450 (4th Cir. 1979). However, almost thirty years after the *Prino* decision, the Fourth Circuit adopted the majority definition of willful. *See RSM, Inc. v. Herbert,* 466 F.3d 316, (4th Cir. 2006); *See also American Arms Intern. v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009) (reconciling intra-circuit inconsistency and recognizing adoption of majority rule).

violations of the GCA. *See General Store, Inc. v. Van Loan*, 560 F.3d 920, 923 (9th Cir. 2009). Many courts, however, have consistently held that violations become willful when errors continue despite repeated warnings. *See RSM*, 466 F.3d at 322 ("[W]hen such errors continue or even increase in the face of repeated warnings . . . one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point,* the failures show the licensee's plain indifference and therefore become willful.") (emphasis in original); *see also Borgelt v. Bureau of Alcohol, Tobacco and Firearms*, 2009 WL 3149436, 4 (W.D.Wash.) ("[T]he government often proves willfulness by showing that a licensee repeatedly violated regulations despite knowledge of them and repeated warnings."). Some facts weigh more heavily than others in favor of willfulness. One court, addressing this precise issue, relied primarily on three factors. Namely, the licensee's: (1) knowledge of its record-keeping obligations; (2) persistent failure to comply with the provisions of the GCA; and (3) receipt of a warning letter advising it that future violations could result in the revocation of its license. *See, e.g., Nationwide Jewelry & Pawn, Inc. v. U.S.*, 455 F.Supp.2d 1379, 1385 (M.D.Ga.2006) (citing *Willingham Sports*, 415 F.3d at 1277). The Court agrees that these factors are persuasive.

In light of the factors that establish willfulness, the Court concludes that August Arms committed willful violations of the GCA. First, it is indisputable that August Arms was aware of its legal obligations. During the two warning conferences in 2000 and 2006, the ATF inspector reviewed each violation with August Arms and discussed the necessary corrective actions. *2000 Warning Conference Letter* (GX-D3); *2006 Warning Conference Letter* (GX-D12) [Doc. 27-1]. Moreover, David Augustson signed an Acknowledgment of Federal Firearms Regulations, demonstrating that he understood the regulatory requirements applicable to firearm dealings. *See*

*Acknowledgment of Federal Firearms Regulations* (GX-D11) [Doc. 27-1]; *see also Service Arms Co., Inc. v. U.S.*, 463 F.Supp. 21, 25 (W.D.Okla. 1978) (failure to follow regulations owner had knowledge of was willful).

Second, the ATF inspection records reveal that August Arms committed hundreds of record-keeping errors and omissions over a period of seven years. In 2000, among numerous other violations, August Arms was cited for failing to record 459 dispositions and 76 acquisitions. *See 2000 Report of Violations* (GX-D1) [Doc. 27-1]. In 2001, 2004, and 2005, August Arms was cited for, *inter alia*, failing to accurately complete Form 4473 on several occasions and failing to report the theft or loss of firearms. *See 2001 Report of Violations* (GX-D6); *2004 Report of Violations* (GX-D8); *2005 Report of Violations* (GX-D10) [Doc. 27-1]. The 2007 compliance inspection, which formed the basis for the license revocation, revealed the same or similar violations. *See Petitioner's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56* [Doc. 21] at 3-8 (discussing the 2007 violations, but disputing that the violations were committed willfully). Thus, the inspection record shows that August Arms failed to comply with the provisions of the GCA after four previous compliance inspections, two warning conferences, and several letters warning that further willful violations may result in the revocation of its federal firearms license.

Third, the ATF repeatedly warned August Arms, verbally and in writing, that its license was contingent on compliance with the GCA. In 2000 and 2006, August Arms received letters warning that future violations, repeat or otherwise, could result in the revocation of its federal firearms license. *E.g., 2000 Warning Conference Letter* (GX-D3); *2006 Warning Conference*

11

*Letter* (GX-D12) [Doc. 27-1]. Nonetheless, violations persisted even though August Arms was explicitly put on notice that future violations could jeopardize its license.

In response, Mr. Augustson contends that he should not be responsible for the record-keeping errors committed by his wife—an employee of August Arms—because her neuropsychological illnesses caused her to inadvertently make many of the record-keeping errors cited by the ATF. However, to the extent that noncompliance was attributable to the acts of another employee, Mr. David Augustson is accountable for the conduct of his wife under the doctrine of respondeat superior. *See, e.g., McLemore v. Treasury Dept.,* 317 F.Supp. 1077, 1079 (N.D. Fla. 1970). Moreover, by his own admission, Mr. Augustson acknowledges that he is personally responsible for at least seven of the errors cited during the 2007 compliance inspection. *See, e.g., Petitioner's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56* [Doc. 21] at 3. Because it is within the ATF's discretion to revoke a license for even a *single* willful violation of the GCA, seven violations is more than sufficient to warrant revocation. *See, e.g., Armalite*, 544 F.3d at 647; *Trader Vic's Ltd. v. O'Neill*, 169 F.Supp.2d 957, 962 (N.D.Ind. 2001); *Harrison v. U.S. ex rel. Dept. of Treasury*, 2006 WL 3257401 (E.D.Okla. 2006).

To overlook hundreds of errors and omissions that persisted after four compliance inspections would ultimately frustrate the primary purpose of the GCA. Congress enacted the GCA in order to curb crime by "keeping firearms out of the hands of those not legally entitled to possess them." S.Rep.No.1501, pt. 2, at 55 (1968). The strict record-keeping requirements of the GCA help law enforcement to trace firearms and keep them away from potentially dangerous individuals. *See generally Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't*, 481 F.Supp.

800, 806 (D.Neb. 1979) (discussing the legislative history and purpose of the GCA). Although August Arms contends that its record-keeping errors and omissions were merely inadvertent mistakes, the statutory scheme of the GCA is premised on accurate and meticulous compliance with these record-keeping details. *See, e.g., Nationwide Jewelry*, 455 F.Supp.2d at 1386. The Eleventh Circuit has noted that, "[i]f ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' the [GCA] would appear to fit that bill." *Willingham Sports*, 415 F.3d at 1309. Moreover, August Arms failed to correct hundreds of record-keeping errors and omissions after numerous warnings accompanied by explanations of the legal requirements. This history of repeated violations in the face of multiple warnings exceeds the threshold requirement of "willfulness," and demonstrates at least plain indifference to the GCA's record-keeping requirements. *See, e.g., Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 679 (N.D. Ill. 2004) ("Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness."). Therefore, the Court finds that August Arms willfully violated the provisions of the GCA.

## IV. Conclusion

For the foregoing reasons, this Court finds that there is no genuine issue of material fact about whether August Arms committed willful violations of the GCA. The Defendant's Motion for Summary Judgment will therefore be GRANTED, and the Plaintiff's Motion for Summary Judgment will be DENIED.

Dated: July 29, 2010

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE